# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY | * | |
| t/o/u and t/u/o | * | |
| MICHAEL MCINTYRE AND SUSAN MCINTYRE | * | |
| Plaintiffs | * | Civil Action No.: 07-280 (RCL) |
| v. | * | |
| VICTORIA MANAGES | * | |
| Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST VICTORIA MANAGES

Plaintiff First American Title Insurance Company ("First American") t/o/u and t/u/o Michael and Susan McIntyre, by and through its attorneys, Council, Baradel, Kosmerl & Nolan, P.A. and Michael N. Russo, Jr., hereby requests an entry of default judgment against Defendant Victoria Manages pursuant to Federal Rule of Civil Procedure 55(b0(2), and for cause states:

1.      On or about February 7, 2007, First American filed a Complaint with this Court alleging fraud, negligent misrepresentation and breach of special warranty deed arising out of a transaction involving the property located at 1614 New Jersey Avenue, N.W., Washington, D.C. 20001, and seeking damages as a result of the same.

2.      On or about March 15, 2007, Defendant Victoria Manages executed a Waiver of Service of Summons, which was filed with this Court, in which she acknowledges receipt of the Complaint and Summons.

3.    Defendant Victoria Manages did not file a timely Answer and the clerk of this Court entered a default against Defendant Victoria Manages on July 23, 2007.

4.    Pursuant to Federal Rule of Civil Procedure 55(b)(2), an entry of default judgment is now appropriate.

5.    Plaintiff has filed a Memorandum in Support of this Motion for Entry of Default Judgment.

6.    If this Court deems necessary and appropriate, Plaintiff hereby requests a hearing prior to this Court's ruling on this Motion.

**WHEREFORE**, for the reasons set forth above, Plaintiff First American Title Insurance Company respectfully requests that this Court:

A.    Enter an Order granting this Motion for Entry of Default Judgment Against Defendant Victoria Manages;

B.    Enter an Order directing that a final judgment by default be entered in favor of First American Title Insurance Company against Victoria Manages as follows:

a.    Seventy-seven thousand, six hundred seventy-four dollars and eighty-eight cents ($77,674.88) in compensatory damages;

b.    Two thousand, six hundred ninety dollars and thirty-five cents ($2,690.35) in attorneys' fees from the underlying action in the Superior Court for the District of Columbia;

c.    Ten thousand dollars in punitive damages; and

C.    Grant any and such further relief as this Court deems appropriate in this matter.

COUNCIL, BARADEL
KOSMERL & NOLAN, P.A.


By:         */s/ Michael N. Russo, Jr.*
Michael N. Russo, Jr., Esq.
D.C. Bar # 424712
Stephen A. Oberg, Esq.
D.C. Bar # 475925
125 West Street, Fourth Floor
Post Office Box # 2289
Annapolis, Maryland 21404
Annapolis: 410-268-6600
Baltimore: 410-269-6190
Washington: 301-261-2247
*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Motion for Default Judgment Against Victoria Manages and proposed Order was mailed, postage prepaid on this 25th day of July, 2007 to the following party:

Victoria Manages
6134 Surrey Square Lane #204
District Heights, Maryland 20743


         */s/ Michael N. Russo, Jr.*
Michael N. Russo, Jr.

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY t/o/u and t/u/o MICHAEL MCINTYRE AND SUSAN MCINTYRE | * * * | |
| Plaintiffs | * | Civil Action No.: 07-280 (RCL) |
| v. | * | |
| VICTORIA MANAGES | * | |
| Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST VICTORIA MANAGES**</u>

Plaintiff First American Title Insurance Company ("First American") t/o/u and t/u/o Michael and Susan McIntyre by and through its attorneys, Council, Baradel, Kosmerl & Nolan, P.A. and Michael N. Russo, Jr., pursuant to Federal Rule of Civil Procedure 55(b)(2), hereby offers this Memorandum in Support of its Motion for Entry of Default Judgment Against Victoria Manages, and in support thereof states as follows:

<u>**I.  Relevant Facts and Procedural History**</u>

1.      Defendant Victoria Manages ("Manages") conveyed the real property known as 1614 New Jersey Avenue, N.W., Washington, D.C. 2001 (the "Subject Property") to Michael and Susan McIntyre (the "McIntyres") by Special Warranty Deed on May 31, 2005 and recorded with the Recorder of Deeds for the District of Columbia on June 9, 2005 as Instrument Number 2005079319.  *See* Special Warranty Deed from Manages to the McIntyres, dated May 31, 2005, attached hereto and incorporated herein

as Exhibit 1; Affidavit of Elizabeth Zajic, dated July 25, 2007, attached hereto and incorporated herein as Exhibit 2.

2.    Manages did not disclose to the McIntyres that Sandy Spring Bank held a Deed of Trust on the Subject Property, which was recorded with the Recorder of Deeds for the District of Columbia as Instrument Number 2005048673. *See* Deed of Trust from Manages to Sandy Spring Bank, dated March 8, 2005, attached hereto and incorporated herein as Exhibit 3; HUD-1 signed by Manages and the McIntyres, dated May 31, 2005, attached hereto and incorporated herein as Exhibit 4 (indicating only a first lien held by GMAC Mortgage Corporation); Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

3.    As part of Settlement, Manages executed a "Seller's General Affidavit" stating that she had no notice of any unsatisfied liens on the Subject Property other than those previously disclosed. *See* Seller's General Affidavit executed by Manages, dated May 31, 2005, attached hereto and incorporated herein as Exhibit 5.

4.    First American issued title insurance to the McIntyres against any loss or damages incurred due to an encumbrance on the title of the Subject Property. First American also issued title insurance for the first lien priority of Wells Fargo Bank, N.A. in connection with the two Deeds of Trust conveyed from the McIntyres in the amounts of five hundred fourteen thousand dollars ($514,000.00) and sixty-four thousand, two hundred fifty dollars ($64,250.00) respectively. *See* Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

5.    On August 16, 2006, Sandy Spring Bank filed a Notice of Foreclosure, with respect to the Subject Property as well as two other properties, 311 Douglas Street,

N.E., Washington, D.C. 20002 (the "Douglas Street Property"), and 3113 South Dakota Avenue, N.E., Washington, D.C. 20018 (the "South Dakota Avenue Property"), in the District of Columbia Office of Tax and Revenue Recorder of Deeds, with the foreclosure scheduled to occur on September 26, 2006. *See* Letter from Counsel for Sandy Spring Bank to Federal Title & Escrow Company, Trustee for Wells Fargo Bank, N.A., dated August 16, 2006, attached hereto and incorporated herein as Exhibit 6; Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

6.      First American attempted, unsuccessfully, to obtain information from Manages regarding the foreclosure. *See* Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

7.      On September 8, 2006, the owner of the Douglas Street Property filed a Complaint in the Superior Court for the District of Columbia seeking to enjoin the foreclosure sale. *See* Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

8.      On September 20, 2006, the McIntyres filed a Motion to Intervene as Plaintiffs in the action to enjoin the foreclosure sale. *See* Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

9.      On September 25, 2006, the parties involved in the Superior Court action entered into a settlement agreement, which was later memorialized as a Consent Order As To Preliminary Injunction ("Consent Order"), presented to and entered by the Superior Court. *See* Consent Order As To Preliminary Injunction, dated September 25, 2006, attached hereto and incorporated herein as Exhibit 7.

10.      The Consent Order granted the McIntyres' Motion to Intervene and provided as follows: a) that Sandy Spring Bank could proceed with the foreclosure sale

with respect to the South Dakota Avenue Property; b) that Sandy Spring Bank would bid up to two hundred thousand dollars ($200,000.00) on the South Dakota Avenue Property; c) that if the foreclosure sale of the South Dakota Avenue Property resulted in a deficiency on the amount owed to Sandy Spring Bank, the McIntyres and the owner of the Douglas Street Property would split the deficiency fifty-fifty up to a total of one hundred fifty-six thousand dollars ($156,000.00); and d) that if the deficiency exceeded one hundred fifty-six thousand dollars, Sandy Spring Bank could proceed to foreclosure on the Subject Property and the Douglas Street Property unless the McInyres and the owner of the Douglas Street Property jointly paid the entirety of the deficiency. *See* Consent Order, attached hereto as Exhibit 6; Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

11.    On September 26, 2006, Sandy Spring Bank proceeded with the foreclosure sale of the South Dakota Property and purchased the property for a bid of two hundred thousand dollars ($200,000.00). *See* Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

12.    On October 10, 2006, pursuant to the Consent Order, First American, on behalf of the McIntyres, wired seventy-seven thousand, six hundred seventy-four dollars and eighty-eight cents ($77,674.88) to counsel for Sandy Spring Bank. *See* Wire from First American to Sandy Spring Bank, dated October 4, 2006, attached hereto and incorporated herein as Exhibit 8; Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

13.    The terms of the policy issued by First American to the McIntyres provides that the title is insured against lien or encumbrance on the title and that First

American would pay all costs incurred in defense of the title to the Subject Property.  *See* Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

14.     By making payment on behalf of the McIntyres, First American is subrogated to their rights.  *See* Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2.

15.     First American incurred two thousand, six hundred ninety dollars and thirty-five cents ($2,690.35) in attorneys' fees due to the underlying action in the Superior Court for the District of Columbia.  *See* Attorney Fee Affidavit, dated July 25, 2007, attached hereto and incorporated herein as Exhibit 9.

16.     On February 7, 2007, First American, for its own use and for the use of its insureds, the McIntyres, filed a Complaint with this Court seeking monetary damages arising out of claims for fraud, negligent misrepresentation and breach of Special Warranty Deed.   On March 15, 2007, Manages executed a Waiver of Service of Summons, which was filed with this Court, in which she acknowledged receipt of the Complaint and Summons in the above-captioned matter.  *See* Waiver of Service of Summons, dated March 14, 2007, attached hereto and incorporated herein as Exhibit 10. Manages has not filed a timely Answer.  The clerk of this Court entered a default against Manages on July 23, 2007.  Subsequent to the entry of default, Manages has not filed an Answer or otherwise responded.

## II.  Default Judgment is Appropriate

Following the entry of a default against a party, this Court may enter a Default Judgment upon Motion by a party to the action.  Fed. R. Civ. P. 55(b)(2).  The United States Court of Appeals for the District of Columbia has delineated three criteria to consider when determining whether the entry of a default judgment is appropriate: 1)

whether the defendant's lack of response was willful; 2) whether not entering a default would prejudice the plaintiff; and 3) whether the defendant will likely assert a meritorious defense.  *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980); *Savage v. Scales*, 310 F.Supp.2d 122, 127 (D.D.C. 2004).  This Court is authorized to "enter a default judgment against the defendant for the amount claimed plus costs."  Fed. R. Civ. P. 55(b)(2).  Further, it is entrusted to this Court's discretion to enter judgment by default without a hearing.  Fed. R. Civ. P. 55(b)(2) (providing that "the court *may* conduct such hearings" as it deems proper (emphasis added)).  Although modern courts generally disfavor default judgments, this Court has found them to be proper "when the adversary process has been halted because of an essentially unresponsive party."  *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F.Supp.2d 193, 195 (D.D.C. 2006).

In the case at bar, Defendant Manages has failed to file any responsive pleading of any kind, despite the extension of time for response provided in light of her Waiver of Service of Summons, nor has she indicated any inclination to do so.  At the time of Settlement on May 31, 2005, Defendant Manages signed a HUD-1 disclosing the existence of a first lien on the Subject Property held by GMAC Mortgage Corporation and affirmed in her properly executed "Seller's General Affidavit" that she had no notice of any unsatisfied liens on the Subject Property as of the time of Settlement beyond those previously disclosed, despite her knowledge that such affirmation was materially false due to the undisclosed Deed of Trust in favor of Sandy Spring Bank.  *See* HUD-1, attached hereto as Exhibit 4; Seller's General Affidavit, attached hereto as Exhibit 5; Sandy Spring Bank Deed of Trust, attached hereto as Exhibit 3.

As illustrated above, Plaintiff First American has paid seventy-seven thousand, six hundred seventy-four dollars and eighty-eight cents ($77,674.88) and two thousand, six hundred ninety dollars and thirty-five cents ($2,690.35) in attorneys' fees and as a result of Defendant Manages' failure to disclose the existence of the pre-existing lien on the Subject Property. *See* Wire, attached hereto as Exhibit 8; Affidavit of Elizabeth Zajic, attached hereto as Exhibit 2; Attorney Fee Affidavit, attached hereto as Exhibit 9. Plaintiff First American will suffer prejudice if this Court does not enter a default judgment against Defendant Manages as it will be required to continue to accrue costs and fees pursuing a claim to which Defendant Manages will not respond.

### III.  Conclusion

For the reasons set forth herein, Default Judgment should be entered against Defendant Manages.  The Default Judgment should enter a judgment in favor of Plaintiff First American as follows:

A.    Seventy-seven thousand, six hundred seventy-four dollars and eighty-eight cents ($77,674.88) in compensatory damages;

B.    Two thousand, six hundred ninety dollars and thirty-five cents ($2,690.35) in attorneys' fees from the underlying action in the Superior Court for the District of Columbia;

C.    Ten thousand dollars ($10,000.00) in punitive damages; and

D.    Grant any such further relief as the Court deems proper.

COUNCIL, BARADEL
KOSMERL & NOLAN, P.A.


By: _____ */s/ Michael N. Russo, Jr.* _____
Michael N. Russo, Jr., Esq.

10

D.C. Bar # 424712
Stephen A. Oberg, Esq.
D.C. Bar # 475925
125 West Street, Fourth Floor
Post Office Box # 2289
Annapolis, Maryland 21404
Annapolis: 410-268-6600
Baltimore: 410-269-6190
Washington: 301-261-2247
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Memorandum in Support of Motion for Default Judgment Against Victoria Manages and proposed Order was mailed, postage prepaid on this 25th day of July, 2007 to the following party:

Victoria Manages
6134 Surrey Square Lane #204
District Heights, Maryland 20743

_____*/s/ Michael N. Russo, Jr.*_____
Michael N. Russo, Jr.





LT1-5-2005079319-1

Mail To:
Federal Title & Escrow Company
5335 Wisconsin Ave., NW, #700
Washington, DC 20015

McIntyre/050695

THIS DEED is made on the **31st** day of May, 2005, by and between **Victoria Manages, Sole owner**, party of the first part, and **Susan McIntyre and Michael McIntyre**, parties of the second part:

WITNESSETH, *that in consideration of Ten and no/100 Dollars ($10.00) and other good and valuable consideration,* the said party of the first part does hereby grant and convey unto **Susan McIntyre and Michael McIntyre,** parties of the second part, their heirs, successors and assigns, in fee simple as Tenants by the Entirety all that piece or parcel of land situate, lying and being in the District of Columbia described as follows to wit:

*Lot numbered One Hundred Eighty-four (184) in Square Five Hundred and Nine (509) in a subdivision made by Lewis E. Breuninger, as per plat recorded in Liber 28 at folio 94 among the Records of the Office of the Surveyor for the District of Columbia.*

AND the said party of the first part covenants that she will warrant specially the property hereby conveyed; and that she will execute such further assurances of said land as may be requisite.

Exhibit 1



WITNESS her  hand and seal the day and year hereinbefore written.

Victoria Manages

DISTRICT OF COLUMBIA,      ss:

I, the undersigned, a Notary Public in and for the jurisdiction aforesaid, do hereby certify that Victoria Manages, known to me as the person(s) who executed the foregoing Deed bearing date on the  3 ᵗ     day of May, 2005, personally appeared before me in said jurisdiction and acknowledged the same to be  her  act and deed.

Given under my hand and seal this  3 \ day of May, 2005

Notary Public

My Commission Expires: _____

Helen H. Do
Notary Public, District of Columbia
My Commission Expires 0 14-20 ᵗ

```
RECORDING
SURCHARGE
RECORDATION TAX FEE
TRANSFER TAX FEE
```
```
$        20.00
$         6.50
$     7,064.75
$     7,064.75
```
```
Doc# 2005079319 Fees:$14156.00
06/09/2005 12:55PM Pages 2
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD
```

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FIRST AMERICAN TITLE | * | |
| INSURANCE COMPANY | | |
| t/o/u and t/u/o | * | |
| MICHAEL MCINTYRE AND | | |
| SUSAN MCINTYRE | * | |
| | | |
| Plaintiffs | * | Civil Action No.: 07-280 (RCL) |
| | | |
| v. | * | |
| | | |
| VICTORIA MANAGES | * | |
| | | |
| Defendant | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**AFFIDAVIT OF ELISABETH ZAJIC**</u>

NOW COMES ELISABETH C. ZAJIC to make affidavit as follows:

1.    I am over eighteen years of age and am competent to testify in the above-captioned action.

2.    I am a member of the Bar of the District of Columbia.

3.    I am the Vice President, D.C. State Manager, and Claims Counsel for First American Title Insurance Company with responsibility for the claims asserted with respect to the New Jersey Avenue property as identified in the Complaint filed in the above-entitled action.

4.    First American Title Insurance Company issued title insurance to Michael and Susan McIntyre in connection with their purchase of the New Jersey Avenue property against any loss or damages incurred due to an encumbrance on the title of the property.

5.    First American Title Insurance Company also issued title insurance for the first lien priority position of Wells Fargo Bank, N.A. in connection with two deeds of trust for the

Exhibit 2

New Jersey Avenue property from Michael and Susan McIntyre in the amounts of five hundred fourteen thousand dollars ($514,000.00) and sixty-four thousand, two hundred fifty dollars ($63,250.00) respectively.

6.    At the time that Victoria Manages conveyed the New Jersey Avenue property to the McIntyres by Special Warranty Deed on May 31, 2005, Manages did not disclose the existence of a pre-existing deed of trust with respect to the New Jersey Avenue property in favor of Sandy Spring Bank to the McIntyres or to Wells Fargo Bank, N.A.

7.    On August 16, 2006, Sandy Spring Bank filed a Notice of Foreclosure with respect to the New Jersey Avenue property as well as two other properties located on Douglas Street, N.E. and South Dakota Avenue, N.E., respectively, with the foreclosure scheduled to occur on September 26, 2006.

8.    First American Title Insurance Company was unable to receive any information from Manages regarding the foreclosure, despite its efforts to do so.

9.    On September 8, 2006, the owner of the Douglas Street property filed an action in the Superior Court for the District of Columbia seeking to enjoin the foreclosure sale.

10.    On September 20, 2006, the McIntyres moved to Intervene as plaintiffs in the action for the injunction.

11.    On September 25, 2006, the McIntyres entered into a settlement agreement with the other parties involved, including Manages, that was memorialized as a Consent Order As To Preliminary Injunction and presented to and entered by the Superior Court.

12.    The terms of the Consent Order provided that Sandy Spring could proceed with the foreclosure sale with respect to the South Dakota Avenue property, that Sandy Spring would bid up to two hundred thousand dollars ($200,000.00) on the South Dakota Avenue

property, that if the foreclosure sale of the South Dakota Avenue property resulted in a deficiency on the amount owed to Sandy Spring, the McIntyres and the owner of the Douglas Street property would jointly pay for the deficiency up to a total of one hundred fifty-six thousand dollars ($156,000.00), and that if the deficiency would exceed one hundred fifty-six thousand dollars ($156,000.00), Sandy Spring could proceed with the foreclosure of the Douglas Street and New Jersey Avenue properties unless the McIntyres and the owner of the Douglas Street property paid for the entirety of the deficiency.

13.     On September 26, 2006, Sandy Spring proceeded with the foreclosure sale of the South Dakota Avenue property and purchased that property for a bid of two hundred thousand dollars ($200,000.00).

14.     On October 10, 2006, pursuant to the terms of the Consent Order, First American on behalf of the McIntyres, wired seventy-seven thousand, six hundred seventy-four dollars and eighty-eight cents ($77,674.88) to counsel for Sandy Spring.

15.     Under the terms of the insurance policies issued by First American to the McIntyres, First American insured title to the New Jersey Avenue property against lien or encumbrance on the title and agreed to pay all costs incurred in defense of the title to the property.

16.     Based upon First American's payment on behalf of the McIntyres pursuant to the Consent Order, First American is subrogated to their rights

Elisabeth C. Zajic

3

District of Columbia

~~STATE OF~~ _____ : ~~COUNTY OF~~ _____ : TO WIT:

     I HEREBY CERTIFY that on this ___25th___ day of __July_____, 2007, before me, the subscriber, a Notary Public for the State and County stated above, personally appeared Elisabeth C. Zajic known to me to be the person whose name is subscribed to the foregoing instrument, and made oath in due form of law that the matters and facts set forth in the foregoing instrument are true and correct as therein stated and acknowledged that the said instrument is, in fact, her act and deed and that she has full understanding thereof and full authority as described herein.

     IN WITNESS WHEREOF, I have set my hand and Notarial Seal, the day and year first above written.

_Annette Young_
Notary Public

My Commission Expires: _____

**ANNETTE YOUNG**
**NOTARY PUBLIC, DISTRICT OF COLUMBIA**
**MY COMMISSION EXPIRES 02/28/2010**

4

AFTER RECORDING, PLEASE RETURN TO:
Professionals Title & Escrow Co.
2730 W. University Blvd., #804
Wheaton, MD 20902
Case No. 2-11995-04

Title Insurer: Ticor Title Insurance Company of FL
Lot 0824, Square 4315 AND
Lot 0184, Square 0509 AND
Lot 0108, Square 3554.



~~Return To:~~
~~SANDY SPRING BANK~~

~~9112 Guilford Rd. Suite 2~~
~~Columbia, MD 21046~~

─────────[Space Above This Line For Recording Data]─────────

# DEED OF TRUST

0405095

MIN 100157300000053200



LT1-5-2005048673-1

LT2-0-0-16

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    March 8th, 2005 together with all Riders to this document.

**(B) "Borrower"** is  Victoria Manages, Sole Owner

Borrower's address is 1614 New Jersey Ave NW, Washington, DC 20001
. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is  SANDY SPRING BANK

Lender is a  a Maryland Corporation
organized and existing under the laws of   The United States of America
Lender's address is 17801 Georgia Avenue, Olney, MD 20832

**(D) "Trustee"** is   Stanley L. Merson and S. Lynne Pulford

Trustee's address is 9112 Guilford Rd.  Suite 2, Columbia, MD  21046

0405095
**DISTRICT OF COLUMBIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

VMP®-6A(DC) (0205)     Form 3009 1/01
                (rev. 9/02)
Page 1 of 15    Initials: ___

VMP MORTGAGE FORMS - (800)521-7291

Exhibit 3

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** **"Note"** means the promissory note signed by Borrower and dated   March 8th, 2005
The Note states that Borrower owes Lender  Five Hundred Twenty Two Thousand Fifty
and  no/100.                                                                    Dollars
(U.S. $     522,050.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   March 8th, 2036

**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia:
THE SOUTH 40 FOOT FRONT ON SOUTH DAKOTA AVENUE BY FULL DEPTH OF LOT 9 IN BLOCK NUMBERED 9 IN A.P. PARDON AND OTHER'S SUBDIVISION OF LAND NOW KNOWN AS "WOODRIDGE" AS PER PLAT RECORDED IN LIBER COUNTY 10 AT FOLIOS 59 AND 60 IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA.


Blanket (parcel 2) 311Douglas Street, NE
                    Washington, DC 20002
                    Tax id #3554-0108
Blanket (parcel 3) 1614 New Jersey Avenue, NW
                    Washington, DC 20001
                    Tax id # 0509-0184
Parcel ID Number:    4315-0824                    which currently has the address of
3113 South Dakota Ave NE                                              [Street]
Washington, District of Columbia 20018    [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.



THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's



obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance




proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

0405095

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.




NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.00 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____
Jonathan C. Levy, Esq., Witness

_____ (Seal)
Victoria Manages              -Borrower

1614 New Jersey Ave NW
Washington, DC 20001          (Address)

_____ (Seal)
                              -Borrower

                              (Address)

_____ (Seal)     _____ (Seal)
                   -Borrower                                 -Borrower

         (Address)                                  (Address)

_____ (Seal)     _____ (Seal)
                   -Borrower                                 -Borrower

         (Address)                                  (Address)

_____ (Seal)     _____ (Seal)
                   -Borrower                                 -Borrower

         (Address)                                  (Address)

0405095

State of Maryland,    County of Frederick

~~DISTRICT OF COLUMBIA~~ xxxxxxxxxxxxxxxxxxxxxxxxxx

    I,    Kimberly W. King                  , a Notary Public in and for the ~~DISTRICT~~ said jurisdiction ~~of Columbia~~, do hereby certify that Victoria Manages

personally known to me as the person(s) who executed the foregoing instrument bearing date of 8th day of    March 2005        , personally appeared before me in said District and acknowledged said instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes therein contained.

    Witness my hand and official seal this    8th    day of    March 2005



Notary Public, ~~DC~~ Kimberly W. King      (Seal)



File Number: 2-11995-04

# FULL LEGAL

Exhibit "A" to Deed of Trust

(*Parcel 1)
The South 40 foot front on South Dakota Avenue by full depth of lot 9 in Block numbered 9 in
A.P. Pardon and other's subdivision of land now known as "WOODRIDGE", as per plat
recorded in Liber County 10 at folios 59 and 60 in the Office of the Surveyor for the District of
Columbia.
NOTE: At the date hereof the above described land is designated on the Records of the
Assessor for the District of Columbia for assessment purposes as Lot 824 in Square 4315.
AND
(**Parcel 2)
Lot 108 in Square 3554, in a subdivision made by Gertrude L. Reed, as per plat recorded in
Liber No. 80 at folio 133 among the records of the Office of the Surveyor of the District of
Columbia.
AND
(**Parcel 3)
Lot numbered One Hundred Eighty-four (184) in Square Five Hundred and Nine (509) in a
subdivision made by Lewis E. Bruenineer, as per plat recorded in Liber 28 at folio 94 among
the Records of the Office of the Surveyor for the District of Columbia.



Doc# 2005048673 Fees:$3007.05
04/07/2005   12:44PM Pages 16
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING                    $      118.00
RECORDATION TAX FEE          $    2,882.55
SURCHARGE                    $        6.50

OMB NO. 2502-0265

| A. | | B. TYPE OF LOAN: |
|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | | 1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS. |
| **SETTLEMENT STATEMENT** | | 6. FILE NUMBER: 050695 |
| | | 7. LOAN NUMBER: 0053683496 |
| | | 8. MORTGAGE INS CASE NUMBER: |

C. NOTE:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked *[POC]* were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF PURCHASER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Susan McIntyre<br>Michael McIntyre<br>1614 New Jersey Avenue, NW<br>Washington, DC 20001 | Victoria Manages<br>314 Carmody Hills Drive<br>Capitol Heights, MD  20743 | Wells Fargo Bank, N.A.<br>P.O. Box 5708<br>Springfield, OH 45501 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT:      52-1998589 | I. SETTLEMENT DATE: |
|---|---|---|
| 1614 New Jersey Avenue, NW<br>Washington, DC 20001 | Federal Title & Escrow Company<br><br>PLACE OF SETTLEMENT<br><br>5335 Wisconsin Ave., NW, Suite#700<br>Washington, DC 20015 | May 31, 2005 |

| J. SUMMARY OF PURCHASER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM PURCHASER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 642,500.00 | 401. Contract Sales Price | 642,500.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Purchaser (Line 1400) | 17,583.04 | 403. | |
| 104. Administrative Fee | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. DC Property Taxes        to | | 406. DC Property Taxes        to | |
| 107. County Taxes        to | | 407. County Taxes        to | |
| 108. Assessments        to | | 408. Assessments        to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM PURCHASER** | 660,083.04 | **420. GROSS AMOUNT DUE TO SELLER** | 642,500.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF PURCHASER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 20,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 514,000.00 | 502. Settlement Charges to Seller (Line 1400) | 40,559.17 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. FT&E Online Order Discount | 800.00 | 504. Payoff of first Mortgage to GMAC Mortgage Corporat | 510,230.37 |
| 205. 2nd Trust Net Funding | 63,950.00 | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. ($725.00 disbursed) | |
| 208. | | 508. | |
| 209. Seller Closing Cost Credit | 16,688.82 | 509. Seller Closing Cost Credit | 16,688.82 |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. DC Property Taxes  04/01/05 to 05/31/05 | 94.22 | 510. DC Property Taxes  04/01/05 to 05/31/05 | 94.22 |
| 211. County Taxes        to | | 511. County Taxes        to | |
| 212. Assessments        to | | 512. Assessments        to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. Administrative Fee to Remax Allegiance | 295.00 |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR PURCHASER** | 615,533.04 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 567,867.58 |
| **300. CASH AT SETTLEMENT FROM/TO PURCHASER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Purchaser (Line 120) | 660,083.04 | 601. Gross Amount Due To Seller (Line 420) | 642,500.00 |
| 302. Less Amount Paid By/For Purchaser (Line 220) | ( 615,533.04 ) | 602. Less Reductions Due Seller (Line 520) | ( 567,867.58 ) |
| **303. CASH ( X FROM ) ( TO ) PURCHASER** | 44,550.00 | **603. CASH ( X TO ) ( FROM ) SELLER** | 74,632.42 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.
I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION.  I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

Purchaser  *Susan McIntyre* (signature)
Susan McIntyre

*Michael McIntyre* (signature)
Michael McIntyre

Seller  *Victoria Manages* (signature)
Victoria Manages

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS TRANSACTION.

Federal Title & Escrow Company
Settlement Agent

WARNING:  IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM.  PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT.  FOR DETAILS SEE: TITLE 18 U.S. CODE SECTION 1001 & SECTION 1010.

Exhibit 4

## L. SETTLEMENT CHARGES

| 700. TOTAL COMMISSION Based on Price | $ 642,500.00 @ 6.0000 % | 38,550.00 | PAID FROM PURCHASER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| Division of Commission (line 700) as Follows: | | | | |
| 701. $ 13,275.00   to   Remax Allegiance | | | | |
| 702. $ 19,275.00   to   Michaels Realty, Inc. | | | | |
| 703. Commission Paid at Settlement | | | | |
| 704. | to | | | 32,550.00 |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee     1.0000 % | to Wells Fargo Bank, N.A. | | 5,140.00 | |
| 802. Loan Discount              % | to | | | |
| 803. Appraisal Fee | to | | | |
| 804. Credit Report | to | | | |
| 805. Tax Service Fee | to Wells Fargo Real Estate Tax Service | | 70.00 | |
| 806. Tax Research Fee | to | | | |
| 807. Underwriting Fee | to Wells Fargo Bank, N.A. | | 395.00 | |
| 808. Life of Loan/Flood Cert. | to Wells Fargo Flood Service | | 16.00 | |
| 809. Flood Certification | | | | |
| 810. Document Review/Prep. Fee | | | | |
| 811. Courier/Wire Fee | | | | |
| 812. Processing Fee | | | | |
| 813. Application Fee | to Wells Fargo Bank, N.A. | | 425.00 | |
| 814. Lender's Closing Fee | | | | |
| 815. Broker Premium pd by Lender | | | | |
| 816. Condo Cert. Reimbursement | | | | |
| 817. | | | | |
| 818. | | | | |
| 819. | | | | |
| 820. | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest From 05/31/05  to 06/01/05   @  $   77.450000/day   ( 1 days   %) | | | 77.45 | |
| 902. Mortgage Insurance Premium for    months to | | | | |
| 903. Hazard Insurance Premium for    1.0  years  to Nationwide | | POC $1,595.00 | | |
| 904. | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. Hazard Insurance | 3.000  months  @  $   132.92 per month | | 398.76 | |
| 1002. Mortgage Insurance | months  @  $      per month | | | |
| 1003. DC Property Taxes | 5.000  months  @  $   48.00 per month | | 240.00 | |
| 1004. County Taxes | months  @  $      per month | | | |
| 1005. Assessments | 0.000  months  @  $      per month | | | |
| 1006. | months  @  $      per month | | | |
| 1007. | 0.000  months  @  $      per month | | | |
| 1008. Aggregate Adjustment | months  @  $      per month | | -96.05 | |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement or Closing Fee | to Federal Title & Escrow Co. | | 300.00 | 195.00 |
| 1102. Title Search | to Federal Title & Escrow Company | | 225.00 | |
| 1103. DC Recording Service Fee | to First American Title | | 25.00 | |
| 1104. Title Insurance Binder | to | | | |
| 1105. Deed Preparation | to Tobin, O'Connor & Ewing | | | 80.00 |
| 1106. Release Procurement | to Federal Title & Escrow Co. | | | 120.00 |
| 1107. D.C. Tax Certificate | to Federal Title & Escrow Company | | 15.00 | |
| (includes above item numbers: | ) | | | |
| 1108. Title Insurance | to First American Title Insurance Company | | 2,809.38 | |
| (includes above item numbers: | ) | | | |
| 1109. Lender's Coverage | $   514,000.00 | | | |
| 1110. Owner's Coverage | $   642,500.00 | | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording Fees: Deed $   33.50; Mortgage $   201.50;   Releases $   50.00  + Cert. of Sat. | | | 235.00 | 50.00 |
| 1202. City/County Tax/Stamps: Deed    ; Mortgage | | | | |
| 1203. State Tax/Stamps:    Deed    ; Mortgage | | | | |
| 1204. DC Recordation/Trsfr Tax | to DC Treasurer | | 7,067.50 | 7,067.50 |
| 1205. 1st Half RE Taxes 2005 | to DC Treasurer | | | 211.67 |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey | to Landtech | | 176.00 | |
| 1302. Pest Inspection | to | | | |
| 1303. Courier/Overnight/Copies/Fax | to Federal Title & Escrow Company | | 65.00 | 35.00 |
| 1304. Water Escrow | to D.C. Water & Sewer Authority | | | 250.00 |
| 1305. | | | | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | | 17,583.04 | 40,559.17 |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement

Federal Title & Escrow Company
Settlement Agent

Certified to be a true copy

## SELLER'S GENERAL AFFIDAVIT

FTE File No.: 050695

The undersigned ("Seller"), being first duly sworn, states and affirms that:

1.  I/We am/are over the age of 18 years.

2.  I/We can be reached after settlement at the following address and telephone number:
    314 Okenody Hills Drive
    Capitol Heights, MD 20743
    Phone: (202) 504-6043

3.  If this affidavit is made as authorized representative for a legal entity, I state that I am duly authorized to make this affidavit and have the requisite knowledge to make these statements.

4.  Seller is the owner of the Property known as:
    1614 New Jersey Avenue, NW, Washington, DC 20001 (herein "Property")

5.  During the period that the Property has been in the Seller's possession, the possession has been peaceable and undisturbed, and the title thereto has never been disputed, questioned, or rejected, nor title insurance refused, to the best of my knowledge. I know of no facts by reason of which said possession or title might be called into question, or by reason of which any claim to any part of the Property or any interest therein adverse to me might be asserted.

6.  There are no federal tax claims or any liens assessed or filed against Seller. There are no judgments against Seller unpaid or unsatisfied entered in any court, nor actions pending affecting the Property, and the Property will be, immediately post-closing, free from all leases mortgages, taxes, assessments (special or otherwise), water charges and other liens and encumbrances, all of which items will or have been satisfied and paid at or before closing.

7.  There are no unpaid debts for plumbing fixtures, water heaters, floor furnaces, air conditioners, radio or television antennae, carpeting, rugs, lawn sprinkling systems, venetian blinds, window shades, draperies, electric appliances, fences, street paving, or any personal property or fixtures that are located on the Property and all labor and materials used in the construction or improvements on the Property have been paid for and there are now no unpaid labor or material claims against the improvements or the Property and no such items have been purchased on time payment contracts, and there are no security interests on the Property.

8.  No proceedings in bankruptcy have ever been instituted by or against Seller, nor has Seller at any time made an assignment for the benefit of creditors, nor an assignment, now in effect, of the rents of the Property or any part thereof, nor is there any pending or threatened litigation against any Seller; nor is any Seller the subject of any proceeding dealing with mental competency.

9.  I/We am/are ___X___ married _____ unmarried

Exhibit 5

10.    No Seller has been known by any other legal name, except:

          _____

          _____

11.    The property ____was/____was not occupied by any tenants at the time of execution of the sales contract, nor since that date. If the property was occupied by tenants, the settlement sheet accurately reflects adjustments of rents and security deposits and notice is hereby given that Seller has complied with all provisions and requirements of the Title IV of the District of Columbia Law 3-86, "Rental Housing Conversion and Sale Act of 1980" as amended or supplemented, or any successor legislation. There is no pending or threatened litigation concerning present or former tenants in any way affecting the Property.

12.    Seller is not a nonresident alien for the purposes of U.S. income taxation and the address and Federal Identification Number of each Seller is accurate.

13.    Seller understands that this affidavit may be disclosed to the Internal Revenue Service, and that any false statement made may be punishable by fine, imprisonment, or both.

14.    This affidavit is executed with the knowledge that (a) it is made to induce the purchaser(s) to complete this transaction; (b) it is made to induce the settlement attorney and the title insurance company to issue its policy of title insurance covering the Property; (c) the purchaser and/or lender in this transaction is/are relying upon the representations contained herein in purchasing same or lending money thereon and would not purchase same or lend money thereon unless said representations were made. The undersigned agrees to indemnify and hold harmless Federal Title & Escrow Company for, from and against any claims, expenses, demands or causes of action, including, but not limited to, reasonable attorneys fees, it may incur as a result of its reliance on the statements made under oath and subject to penalties of perjury herein.

15.    Seller agrees to pay on demand to the purchasers and/or lenders, their successors and assigns, all amounts secured by any and all liens not disclosed herein, as well as any other debts arising from the ownership of the Property, together with all costs, loss and attorney's fees that said parties may incur in connection with such liens or obligations, provided said liens or obligations either currently apply to the Property, or to a part thereof, or are subsequently against said Property and are created by Seller, or known to Seller, or have an inception date prior to the consummation of this transaction. Seller indemnifies and holds harmless the settlement attorney and the title insurance company underwriting this transaction, for all damages, including reasonable attorney's fees, in connection with the resolution of matters covered by this affidavit.

16.    Seller, in consideration of FEDERAL TITLE AND ESCROW COMPANY disbursing the proceeds for the sale, recording any conveyancing or security instruments among the Land Records and issuing policy(ies) of title insurance, hereby agree to appoint FEDERAL TITLE AND ESCROW COMPANY, its employees, officers and/or assigns as my/our agent and Attorney-in-Fact Fact with power to correct, execute, acknowledge, initial, deliver, or re-sign any forms or other documents as may be necessary to complete the closing, record any conveyancing documents or security instruments and issue policy(ies) of title insurance, which appointment shall survive settlement and the closing of the loan (if applicable) for a period of ten (10) business days, and shall insure to the benefit of FEDERAL TITLE & ESCROW COMPANY, its successors and assigns, and

be binding upon the heirs, devisees, personal representatives, successors, and assigns of the undersigned.

17. In the event that, post-closing, real property taxes, general or special, are claimed to be due by the District of Columbia, Seller, shall within three (3) days of notice of the sum due, render full payment to the taxing authority. In the event the sum due is not timely paid, Seller shall be liable for all costs and expenses of collection, including reasonable legal fees, and the time of FEDERAL TITLE & ESCROW COMPANY employees, until the total sum due, including unpaid taxes, interest and penalties is paid.

18. Sellers understands and hereby acknowledges that FEDERAL TITLE & ESCROW COMPANY is the *settlement agent* working to complete the transactions and honor a contractual agreement between the parties. ***Tobin, O'Connor & Ewing, general counsel for* FEDERAL TITLE & ESCROW COMPANY, *does not represent any one party to this transaction as his/her/its individual legal counsel.*** All parties are encouraged to retain their own legal counsel in connection with the above-referenced transaction.

Witness my/our hand(s) and seal(s) this __28__ day of **May 2005.**

_____          SSN: _____
Victoria Manages

_____          SSN: _____

DISTRICT OF COLUMBIA:

I, the undersigned, a Notary Public in and for the aforesaid jurisdiction, do hereby certify that Victoria Manages   appeared personally before me and, known to me as the person(s) who executed the foregoing instrument in said jurisdiction on the date stated herein, acknowledged said instrument to be his/her/their/its act and deed, executed or the purposes therein contained.

Witness my hand and seal this __31__ day of **May 2005.**

_____ [SEAL]
Notary Public
My commission expires:

Helen H. Do
Notary Public, District of Columbia
My Commission Expires 8-14-2009

LAW OFFICES OF

# GOOZMAN, BERNSTEIN & MARKUSKI

CHERRY LANE PROFESSIONAL PARK, SUITE 207
9101 CHERRY LANE
LAUREL, MARYLAND 20708-1147

D.C. AREA 301 - 953-7480
BALTIMORE AREA 410 - 792-0075

FAX 301 - 953-1339

MARTIN L. GOOZMAN *
JEFFREY W. BERNSTEIN *
V. PETER MARKUSKI, JR. *
LEO J. KEENAN, III **

MONTGOMERY COUNTY OFFICE
3423 OLNEY-LAYTONSVILLE ROAD, SUITE 5
OLNEY, MARYLAND 20832
301 - 774-5308
FAX 301 - 774-4820

* D.C. & MARYLAND BAR
**MARYLAND BAR

August 16, 2006

Federal Title & Escrow Company          By Certified Mail
Trustee For Wells Fargo Bank, NA        (Return Receipt Requested)
Wells Fargo Financial National Bank     And By First Class Mail
5335 Wisconsin Ave., N.W.
Suite 700
Washington, DC 20015

          Re:  Our Client:   Sandy Spring Bank
               Borrower:     Victoria Manages
               Loan:         $522,050.00 Construction Note
                             Dated 3/8/05
                             Deed Of Trust to Stanley L. Merson
                             And S. Lynn Pulford, Trustees,
                             Recorded as Instrument No. 48673
                             Among The Land Records Of The
                             District Of Columbia
               Property:     3113 South Dakota Ave., N.E.
                             Washington, D.C. 20018
                             Tax I.D. No. 4315-0824
               Additional
                 Property:   311 Douglas Street, N.E.
                             Washington, D.C.  20002
                             Tax I.D. No. 3551-0108
               Additional
                 Property:   1614 New Jersey Ave., N.W.
                             Washington, D.C. 20001
                             Tax I.D. No. 0509-0184
               Subject:      Notice of Foreclosure Sale
                             Sale Date: September 26, 2006,
                             10:30am

Dear Sir or Madam:

     PLEASE TAKE NOTICE that we represent Sandy Spring Bank,
the Holder of a First Trust on the aforereferenced Property
pursuant to a default under that certain Deed Of Trust from

Exhibit 6

Stanley L. Merson and S. Lynne Pulford, Trustees, to Victoria Manages, dated March 8, 2005 and recorded among the Land Records of the District of Columbia on April 7, 2005, as Document No. 2005048673.

A search of the Land Records of the District of Columbia indicates that you are the Trustee for Wells Fargo Financial National Bank and Wells Fargo Bank, NA, both of which have a junior secured interest in the property known as and located at 1614 New Jersey Avenue, N.W., Washington, DC 2001, pursuant to a Deed Of Trust from Susan McIntyre and Michael McIntyre, Grantors, dated 5/31/05, and recorded as Instrument No. 79321. Accordingly, pursuant to District of Columbia Public Law 90-566, we have enclosed a copy of the Notice of Foreclosure that has been filed in the Land Records of the District of Columbia.

Pursuant to District of Columbia Public Law 90-566, PLEASE TAKE NOTICE that the foreclosure sale of the above-captioned properties will take place at a public auction to be held by Harvey West Auctioneers, Inc. on September 26, 2006 at 10:30 a.m. and will be sold then and there to the highest bidder(s). A deposit payable in cash or by certified or cashier's check will be required from the purchaser(s). We suggest that you communicate immediately with your title company and/or your title insurance company.

If you have any questions, please call Shawn Bartley at phone number 301-953-7480.

Very truly yours,

GOOZMAN, BERNSTEIN & MARKUSKI

Martin L. Goozman

MLG/msg
Enclosure
cc:  Ted Fleming, V.P. (Sandy Spring Bank)

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

★ ★ ★

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
515 D Street, NW
Washington, DC 20001
Phone (202)727-5374

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square | 509 | Suffix | | Lot | 184

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: FEDERAL TITLE & ESCROW COMPANY

TRUSTEE FOR WELLS FARGO BANK, NA AND WELLS FARGO FINANCIAL NATIONAL BANK

5335 WISCONSIN AVE., NW, SUITE 700

WASHINGTON, DC 20015

FROM: MARTIN L. GOOZMAN, ESQ. | PHONE: | (301) 953-7480

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON SEPTEMBER 26 , 20 06 , AT THE OFFICE OF HARVEY WEST AUCTIONEERS, INC

5335 WISCONSIN AVENUE, NW, SUITE 440; WASHINGTON, DC 20015

10:30 AM A.M./P.M. THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on APRIL 7 , 20 05 .

Liber: | | Folio: | | Instrument No: | 2005048673

Maker(s) of the Note secured by the instrument: VICTORIA MANAGES

| 3113 SOUTH DAKOTA AVE, NE, WASHINGTON, DC 20018
Phone | Last Known Address

Description of Property: DWELLING

(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: 1614 NEW JERSEY AVE, NW, WASHINGTON, DC 20001

Square: 509 | Lot: 184 | or Parcel No:

Holder of the Note (Name): SANDY SPRING BANK

Phone: (301) 774-6400 | Address: 17801 GEORGIA AVE, OLNEY, MD 20832

Balance owed on the Note: $ 311,350.93

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 Right to Cure a Residential Mortgage Foreclosure Default Act of 1984.

$ 313,555.52

Name of person to contact to stop foreclosure sale: MARTIN L. GOOZMAN

Address: 9101 CHERRY LANE, LAUREL, MD 20708 | Phone: (301) 953-7480

★ ★ ★

**NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT**

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
515 D Street, NW
Washington, DC 20001
Phone (202)727-5374

Square [ 509 ]     Suffix [     ]     Lot [ 184 ]

I, hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on [ 16TH DAY OF AUGUST ], 20[ 06 ]; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

[ 08/16/2006 ]                     _(Signature of Noteholder or his agent)_
Date

I, [ LACIE RICHARDS ], a Notary Public in and for the [ STATE OF MARYLAND, HOWARD COUNTY ], DO HEREBY CERTIFY THAT [ MARTIN L. GOOZMAN, ESQ. ] who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the [ 16 ] day of [ AUGUST ], 20[ 06 ], personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be [ HIS ] act and deed.

Given under my hand and seal this [ 16 ] day of [ AUGUST ], 20[ 06 ].

_____
Notary Public

My Commission Expires: [ 12/22/08 ]
                        mmddyyyy

RECEIVED OCT 0 2 2006

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

*1190.144*

KYLE L. TERRY             :
      And
LOUVENIA W. WILLIAMS      :
Trustee
                          :

      Plaintiffs          :

      v.                  :  **Civil Action No.: 06-6856**
                             Calendar 14
VICTORIA MANAGES          :  Judge Retchin
      And
SANDY SPRING BANK         :
      AND
MARTIN L. GOOZMAN         :
Substitute Trustee
                          :

      Defendants          :

## CONSENT ORDER AS TO PRELIMINARY INJUNCTION
(September 25, 2006)

Upon   consideration   of   the   Motion   for   Preliminary
Injunction filed by Kyle L. Terry and Louvenia W. Williams and
the  Motion  to  Intervene  as  Plaintiffs  filed  by  Michael  and
Susan  McIntyre,  and  the  response  filed  thereto  by  the
Defendants  Martin  L.  Goozman  and  Sandy  Spring  Bank,  and  the
consents  of  the  parties  as  is  evidenced  by  the  signatures  of
their  respective  counsel  attached  hereto,  it  is  on  this  25^th^
day  of  September,  2006  by  the  Superior  Court  of  the  District  of
Columbia;

Order docketed 9/28/06 and copies
mailed from chambers to parties
indicated above on 9/29/06.

1



Case: 2006 CA 006856 R(RP)

Exhibit 7

**ORDERED**, that Michael and Susan McIntyre's Motion to Intervene be and hereby **GRANTED**; and it is further;

**ORDERED**, that Michael and Susan McIntyre shall henceforth proceed as Plaintiffs in this action, and it is further;

**ORDERED**, that the Defendants, Martin L. Goozman and Sandy Spring Bank, shall proceed on September 26, 2006, with only the foreclosure of the property known as 3113 South Dakota Avenue, Washington, D.C. and it is further;

ORDERED, that Defendant Sandy Spring Bank will agree to bid up to two hundred thousand dollars ($200,000) on the property at 3113 South Dakota Ave. Washington, D.C. and it is further;

**ORDERED**, that in the event the foreclosure sale of the 3113 South Dakota Avenue, Washington, D.C. property results in a deficiency on the amount due Sandy Spring Bank on its loan secured by a deed of trust on said property, Plaintiffs Michael and Susan McIntyre and Kyle Terry, through his title insurer, will agree to split the deficiency 50/50 up to a total of one hundred and fifty-six thousand dollars ($156,000) and it is further;

ORDERED, that in the event the deficiency exceeds the $156,000 amount, Defendant Sandy Spring Bank can proceed to foreclosure unless within 30 days from the sale unless McIntyre

2

and Terry, through his insurer, pay the entirety of the deficiency owed, and it is further

ORDERED that in the event that the deficiency exceeds $156,000, McIntyre and Terry retain the right to challenge the validity of the Sandy Spring Bank's deed of trust

**ORDERED**, that in the unlikely event the Defendant, Sandy Spring Bank, proceeds to foreclosure on either or both the 311 Douglas Street, S.E. Washington, D.C. property or 1614 New Jersey Avenue, N.W., Washington, D.C. property, this Court shall retain jurisdiction to adjudicate Plaintiffs' claims based on equitable subordination, and the net proceeds resulting from the foreclosure of either or both the 311 Douglas Street, S.E. Washington, D.C. property and 1614 New Jersey Avenue, N.W., Washington, D.C. property, to the extent contraverted, shall be held in escrow by Jeffrey W. Bernstein, Esquire, in an interest bearing attorney escrow account until further order of this Court or upon written instructions from the Plaintiffs, Kyle L. Terry, Louvenia W. Williams, Michael McIntyre and Susan McIntyre, and the Defendant, Sandy Spring Bank.

3

_____
Judge Judith  E. Retchin

**AGREED AND CONSENTED TO:**

_____ /scm
Jeffrey W. Bernstein, Esquire
Goozman, Bernstein & Markuski
9101 Cherry Lane, Suite 207
Laurel, Maryland 20708
Attorney for Sandy Spring Bank

_____ /scm
Samantha Mazo, Esquire
Deborah Baum, Esquire
Pillsbury Winthrop Shaw, Pittman LLP
2300 N. Street, N.W.
Washington, D.C. 20037-1128
Attorneys for Kyle Terry & Louvenia Williams

_____ /scm
Michael N. Russo, Esquire
Stephen O. Oberg, Esquire
Council, Baradel, Kosmeri & Nolan, P.A.
125 West Street, 4th Floor
P.O. Box 2289
Annapolis, Maryland 21401
Attorneys for Michael and Susan McIntyre

4

## Michael N. Russo Jr.

**From:**   Asero, Debbie S [dasero@firstam.com]
**Sent:**   Wednesday, October 04, 2006 9:53 AM
**To:**   Zajic, Elisabeth; Michael N. Russo Jr.
**Subject:** FW: URGENT WIRE REQUEST 06-119

Elisabeth,
The wire has been sent.

*Deborah S. Asero*
*Assistant Vice President*
*Paralegal/Regional Claims Administrator*
*First American Title Insurance Company*
*3859 Centerview Drive, Suite 300*
*Chantilly, Virginia 20151*
*1-800-733-3284 Direct 703-480-9514*
*Facsimile 703-480-9614*
*Office Hours:  6:00 A.M. to 3:00 P.M.*

**From:** Luc, Tien
**Sent:** Wednesday, October 04, 2006 9:52 AM
**To:** Asero, Debbie S
**Subject:** RE: URGENT WIRE REQUEST

```
Debbie, please confirmation below:
```



Exhibit 8

11/9/2006

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY t/o/u and t/u/o MICHAEL MCINTYRE AND SUSAN MCINTYRE | * * * | |
| Plaintiffs | * | Civil Action No.: 07-280 (RCL) |
| v. | * | |
| VICTORIA MANAGES | * | |
| Defendant | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**ATTORNEY FEE AFFIDAVIT**

I, Michael N. Russo, Jr., hereby make affidavit upon personal knowledge, as follows:

1.      I am an attorney admitted to practice before the United States District Court for the District of Columbia.

2.      Our firm has billed paralegals' time at $100.00 per hour and my time at $180.00 per hour for the duration of the period for which the matter in the Superior Court for the District of Columbia was pending.

3.      Plaintiff has incurred attorney's fees as a result of Defendant Manages' actions as follows:

- 0.40 hours of the paralegal's time contacting opposing counsel and preparing and reviewing the status of the matter -- $40.00

Exhibit 9

- 14.20 hours of my time receiving and reviewing the file; reviewing the action filed by codefendant; negotiating the resolution with counsel for the foreclosing lender; drafting and revising the settlement documents and concluding the settlement-- $2,556.00

- Fees for faxing, long distance telephone calls, filing pleadings, and photocopies -- $94.35

4.     Plaintiff's total attorney's fees are $2,690.35 with respect to the underlying action in the Superior Court for the District of Columbia.

5.     The legal fees and expenses incurred were necessary, fair and reasonable.

I SOLEMNLY DECLARE under the penalty of perjury and upon personal knowledge that the contents of this paper are true.

Michael N. Russo, Jr.

2

STATE OF *Maryland* : COUNTY OF *Anne Arundel* TO WIT:

      I HEREBY CERTIFY that on this *25th* day of *July*, 2007, before me, the subscriber, a Notary Public for the State and County stated above, personally appeared Michael N. Russo, Jr. known to me to be the person whose name is subscribed to the foregoing instrument, and made oath in due form of law that the matters and facts set forth in the foregoing instrument are true and correct as therein stated and acknowledged that the said instrument is, in fact, her act and deed and that she has full understanding thereof and full authority as described herein.

      IN WITNESS WHEREOF, I have set my hand and Notarial Seal, the day and year first above written.

                                   *Susan E Martone*
                                     Notary Public

My Commission Expires: *12/1/2010*

SUSAN E. MARTONE
NOTARY PUBLIC
QUEEN ANNE'S CO., MD

3

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

FIRST AMERICAN TITLE
INSURANCE COMPANY

       Plaintiffs,

v.

VICTORIA MANAGES

      Defendant

Civil Action No.: 07-cv-00280-RCL

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## WAIVER OF SERVICE OF SUMMONS

TO: Michael N. Russo, Jr., Esquire –**VIA FAX: 410-269-8490**

      I acknowledge receipt of your request that I waive service of a summons in the action of *First American Title Insurance Company v. Victoria Manages* which is case number 07-cv-00280-RCL in the United States District Court for the District of Columbia. I have received a copy of the summons and complaint in the action, this instrument, and a means by which I can return the signed waiver to you and have agreed to send this form back to you by facsimile.

      I will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

      I understand that a judgment may be entered against me if an answer or motion under Rule 12 is not served upon you within 60 days after March 13, 2007.

_____
Date

VICTORIA MANAGES, Defendant
Address: 1134 Springley Sq. NO.
#204
Distrit Heights, MD 20743
Tel. No. (202) 309-5073

Exhibit 10

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY | * |
| t/o/u and t/u/o | * |
| MICHAEL MCINTYRE AND | |
| SUSAN MCINTYRE | * |
| | |
| Plaintiffs | *    Civil Action No.: 07-280 (RCL) |
| | |
| v. | * |
| | |
| VICTORIA MANAGES | * |
| | |
| Defendant | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER AND DECREE OF DEFAULT JUDGMENT

**UPON CONSIDERATION** of Plaintiff First American Title Insurance Company's Motion for Entry of Default Judgment Against Victoria Manages, and any responses thereto, having been read and considered, it is this _____ day of _____, 2007, by the United States District Court for the District of Columbia,

**ORDERED**, that the Motion for Entry of Default Judgment be and is hereby **GRANTED**; and it is further

**ORDERED**, that judgment be entered in favor of First American Title Insurance Company as follows:

A.    Seventy-seven thousand, six hundred seventy-four dollars and eighty-eight cents ($77,674.88) in compensatory damages;

   B.  Two thousand, six hundred ninety dollars and thirty-five cents ($2,690.35) in attorneys' fees from the underlying action in the Superior Court for the District of Columbia;

   C.  Ten thousand dollars ($10,000.00) in punitive damages; and

   D.  Grant any such further relief as the Court deems proper.


                _____
                Judge, United States District Court for
                the District of Columbia


Copies to:

Michael N. Russo, Jr., Esq.
Council, Baradel, Kosmerl & Nolan, P.A.
125 West Street, 4th Floor
Annapolis, Maryland 21404
*Attorneys for Plaintiff*

Victoria Manages
6134 Surrey Square Lane #204
District Heights, Maryland 20743